BLUEWATERS, INC., Petitioner, Appellant,

v.

Graham Cochrane BOAG et al., Respondents, Appellees.

No. 6103.

United States Court of Appeals First Circuit.

June 28, 1963.

Solomon Sandler, Gloucester, Mass., for appellant.

James A. Whipple, Boston, Mass., with whom Kneeland & Splane, Boston, Mass., and Mendes & Mount, New York City, were on brief, for Graham Cochrane Boag et al. and Orion Insurance Company, Ltd., et al., appellees.

James A. Whipple, Boston, Mass., with whom Kneeland & Splane, Boston, Mass., was on brief, for Steamship Mutual Underwriting Association, Ltd., appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This case presents the single question [1] whether a certain contract [2] of hull insurance issued by appellees included collision, or "Running Down" coverage. The district court held adversely to the insured, and it appeals.

The main, signed, portion of the contract, which will be called the policy to distinguish it from an attachment hereinafter described, was on a standard printed form. It was completed, prior to execution, by the filling of certain blanks by typewriting. The attachment was an Institute form labelled "American Institute Time (Hulls)" which it was stipulated was on a standard printed form. We will follow the parties' loose, and perhaps inaccurate practice of calling it a rider.[3] At the top, in conspicuous capitals, were the typewritten words, "IN SO FAR AS APPLICABLE."

The typewritten portion of the policy provided, inter alia, the following,

"Including the conditions of the AMERICAN HULL FORM as attached in so far as applicable but this insurance is only against Total and/or Constructive Total Loss of Vessel including Salvage, Salvage Charges and Expenses incurred under the Sue and Labour Clause."

Thereafter it was typed on the policy that the annual premium was to be "SIX decimal SEVEN FIVE PER CENT," pre-

---

1. Appellant also appeals from an adverse ruling on another point in connection with another policy, but that issue is fully covered by our decision in Steamship Mutual Underwriting Ass'n, Ltd. v. Landry, 1 Cir., 1960, 281 F.2d 482.

2. Actually, in what we understand to be the general practice, there were two policies, or contracts, one issued by Lloyds, and one a Combined Policy issued by The Institute of London Underwriters.

There were no material differences and we will speak in the singular.

3. In balance this terminology favors appellant. The attachment is not strictly what we understand as a special rider. It is apparently the English practice to issue the standard policy, a so-called "Lloyd's policy," accompanied with standard sets of modifying "Institute" clauses. See 1 Arnould, Marine Insurance, 9 British Shipping Laws, ¶¶ 13-20 (15th ed. 1961).

sumably of the gross hull coverage, which was elsewhere recited in a dollar figure. The parties' trial stipulation stated, in effect, that this lower rate, rather than a normal 10½ per cent, was agreed to in consideration of whatever reduction in coverage was encompassed by the typewriting above quoted. No parole evidence was offered as to what was understood to be the effect of that provision.

The Running Down Clause, commencing "And it is further agreed that if the Vessel hereby insured shall come into collision with any other Ship or Vessel * * *" was the next to last printed paragraph of the rider.

 Irrespective of whether or not the rider provides additional coverage it was not, as appellant seeks to suggest, an independent contract. Rather, the policy and rider constitute, together, a single agreement. Washburn & Moen Mfg. Co. v. Reliance Marine Ins. Co., 1900, 179 U.S. 1, 21 S.Ct. 1, 45 L.Ed. 49. It is difficult to understand how appellant can argue otherwise in view of the fact that the rider itself commences, "To be attached to and form a part of Policy * * *." While there might be an inference arising from its physical attachment that the entire rider was included, this inference alone does not create an ambiguity, to be construed in favor of the insured, if there is an express provision negativing that inference.

██ In the case at bar the words "IN SO FAR AS APPLICABLE" at the top of the rider, coinciding with the same words in the policy itself, of necessity indicate that not the entire rider, but only the "applicable" parts of it, were within the agreement. "Applicable" ordinarily means related to. Particularly must this be so when the provisions so referred to are described as conditions. A condition is normally a limitation of some otherwise broader provision as distinguished from an independent obligation assumed by the promisor.

 Appellant's initial difficulty is that it shows nothing in the policy to which the separate purported collision coverage is applicable. Hence that provision would seem, in terms, not to have been incorporated. In addition to this apparent failure to incorporate, we think it clear that any undertaking such as collision coverage was plainly denied by the typewritten provisions in the policy.[4] We can only so construe, particularly in the context quoted supra, the words "but this insurance is only against Total and/or Constructive Total Loss of Vessel. * * *." It follows that appellees' undertaking consisted of, and only of, the total loss of vessel provisions contained in the policy itself and those conditions or provisions of the rider that related to that coverage. Cf. Otago Farmers' Co-operative Ass'n of New Zealand v. Thompson, [1910] 2 K.B. 145.

Judgment will be entered affirming the judgment of the District Court.

---

4. That typewritten additions normally prevail if there is a conflict with printed provisions is well established. See, e. g., Hagan v. Scottish, etc., Ins. Co., 1902, 186 U.S. 423, 22 S.Ct. 862, 46 L.Ed. 1229.